1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8

9   KENNETH ROBINSON,                          CASE NO. CV F 05-1258 LJO SKO

10                    Plaintiff,                **SUMMARY JUDGMENT DECISION**
            vs.                                 (Doc. 140.)
11
    TIMOTHY GEITHNER, Secretary of the
12  Treasury,

13                    Defendant.
    _____/
14

15                          __INTRODUCTION__

16         Defendant Treasury Secretary Tim Geithner ("Secretary") seeks summary judgment in the

17  absence of evidence to support plaintiff Kenneth Robinson's ("Mr. Robinson's") discrimination and

18  retaliation claims arising from denial of an off site liaison detail for his Internal Revenue Service ("IRS")

19  employment.  Mr. Robinson responds that he was denied the liaison detail to retaliate against his

20  administrative complaint alleging discrimination and filed ten days before to his denial of the liaison

21  detail.  This Court considered the Secretary's summary judgment motion on the record without a

22  hearing, pursuant to Local Rule 230(g).[1]  For the reasons discussed above, this Court GRANTS the

23  Secretary summary judgment.

24  _____

25         [1]        This Court carefully reviewed and considered the record, including all evidence, arguments, points and
    authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
26  by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the
    effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed,
27  considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does
    not rule on objections in a summary judgment context, unless otherwise noted.
28

                                     1

1

## BACKGROUND

2

### Summary

3    Mr. Robinson is black and a former supervising manager at the Fresno IRS Service Center

4    ("Fresno center").  Mr. Robinson pursues a retaliation claim under Title VII of the Civil Rights Act of

5    1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., based on denial of a several-month long, out-of-town

6    liaison detail for late 2002 to early 2003.[2]  The grounds for the denial were his falsification of travel

7    vouchers and similar misconduct when he served a 2000-2001 detail.  In opposing summary judgment,

8    Mr. Robinson claims that he was denied the liaison position on September 5, 2002 in retaliation for

9    filing an August 23, 2002 administrative complaint with the Merit Systems Protection Board ("MSPB")

10   based on alleged discrimination subject to a prior Equal Employment Opportunity Commission

11   ("EEOC") complaint.

12

### Travel Voucher Discrepancies

13   Effective October 22, 2000 to January 28, 2001, Mr. Robinson was detailed to the IRS Media

14   and Publications department as an in plant liaison and traveled to and worked in non-IRS facilities to

15   assist to prepare tax forms and literature.  The liaison position involved substantial travel.  Mr. Robinson

16   had served a prior in plant liaison detail during late 1999 to early 2000.  Mr. Robinson notes that the

17   details would typically last several months after which he returned to his "regular job."

18   In 2001, Mr. Robinson's supervisor Deposit Department Manager Sharon Brockbank ("Ms.

19   Brockbank") discovered discrepancies with Mr. Robinson's travel vouchers for his 2000-2001 in plant

20   liaison position.  Regetter Nobles ("Ms. Nobles"), then assistant branch chief of the Receipt and Control

21   Branch,[3] investigated the travel voucher discrepancies with Ms. Brockbank and Byron Morgan ("Mr.

22   Morgan"), Receipt and Control Branch Chief.

23   In her declaration, Ms. Nobles states:

24   Through our investigation, we discovered that Mr. Robinson submitted a claim

25

26   [2]   Mr. Robinson's operative Second Amended Complaint for Damages ("SAC") alleges discrimination and
retaliation claims.  Mr. Robinson's papers indicate that he "opposes the current summary judgment as to the retaliation claim
only."  The Secretary notes that Mr. Robinson abandons his discrimination claim.  Given Mr. Robinson's failure to request
27   dismissal of his discrimination claim, this Court is compelled to address it out of an abundance of caution.

28   [3]   Ms. Nobles currently serves as Site Coordinator for the Fresno center.

for reimbursement of $819.00 with respect to a rental car despite the fact that he had received a credit from the rental car agency in the amount of approximately $700, meaning that, in fact, Mr. Robinson had been billed only approximately $100. Thus, Mr. Robinson's reimbursement request over-valued his expenses by approximately $700, and he had been paid this amount.

. . .

As a result of our investigation, Ms. Brockbank and I determined that Mr. Robinson had submitted false travel documents that over-stated the true amount of expenses Mr. Robinson incurred. We also determined that Mr. Robinson failed to make timely payments on his government-issued credit card in November and December 2000. This conduct violated specific written directives to submit proper travel documents in a timely manner. Further, Mr. Robinson had been ordered to submit an amended voucher and a check reimbursing the IRS for the $700 he was paid based on his travel voucher directly to the Branch Office. Instead, Robinson sent a check in a different amount to a different office despite Ms. Brockbank's direct order.

Ms. Nobles notes that Mr. Robinson "informed us that he believed that Tommy Villado [("Mr. Villado")], another IRS employee, also had problems with this vouchers with respect to a similar liaison detail." Ms. Nobles attributes Mr. Robinson to have attempted "to excuse his errors by pointing to the conduct of Mr. Villado." Ms. Nobles and Ms. Brockbank investigated and determined that Mr. Villado did not have the same number of discrepancies and that Mr. Villado's discrepancies "were not of as a serious nature as those of Mr. Robinson."

Mr. Robinson appears to identify Ms. Brockbank as another IRS employee who was not disciplined for travel voucher issues. In his interrogatory responses, Mr. Robinson claims that Ms. Brockbank, "a non-African American, admitted having similar issues with vouchers and other travel related expenses as did Plaintiff, she was not disciplined."

In August 2001, Mr. Robinson was suspended one month for "falsification of documents in matters of official interest" (travel vouchers), "failure to comply with written directives and policies," and "failure to properly make payments" on a government-issued credit card.[4] Mr. Robinson claims the suspension was racially discriminatory and on September 19, 2001, amended a pending EEOC complaint to include the suspension. Mr. Robinson had been named as a class member in an April 17, 2001 administrative complaint.

---

[4]     Mr. Robinson attributes the travel voucher problem to confusion between the IRS and rental car company after his rental car had been damaged in an accident. Mr. Robinson claims discrepancies in his and the rental car company's reports. In his declaration, Mr. Robinson states: "The rental car agency gave me paperwork, that was apparently in error. The only thing I did was turn in the paperwork to the IRS."

1   In October 2001, Mr. Robinson was demoted from his supervisory position to a non-supervisory

2   contact representative position.

3   Ms. Nobles declares that neither Ms. Brockbank nor Mr. Villado had been demoted or suspended

4   due to travel voucher problems and that Ms. Brockbank did not serve as an in plant liaison during 2000-

5   2001.

6   **Mr. Robinson's 2002 Application For In Plant Liaison Detail**

7   On May 19, 2002, Mr. Robinson was detailed as a tax exam assistant to the accounts

8   management department, the manager of which was Emma Smith ("Ms. Smith"). The detail was

9   scheduled to terminate on September 7, 2002, and Mr. Robinson's immediate supervisor was Colleen

10   Gonzalez ("Ms. Gonzalez"). Mr. Robinson declared that during May to early September 2002, neither

11   Ms. Gonzalez, Ms. Smith nor another IRS manager communicated "as to where my permanent position

12   with the IRS was going to be. All I knew is that I was on a temporary detail working under Colleen

13   Gonzalez." Mr. Robinson received a "fully successful" June 17, 2002 performance evaluation.

14   In 2002, Mr. Robinson applied for another in plant liaison detail and on August 5, 2002 was

15   notified of his selection, which Mr. Robinson accepted.

16   On August 26, 2002, Mr. Robinson filed a MSPB administrative complaint based on facts subject

17   to his EEOC claim.

18   In his deposition, Mr. Robinson testified that in late August or early September 2002, he was

19   informed that he would not be released for the in plant liaison detail but was not given a reason. In his

20   declaration, Mr. Robinson attributes Ms. Gonzalez during the first week of September 2002 to have

21   informed him orally that he would not be released but "[s]he did not give me a reason." Mr. Robinson's

22   September 5, 2002 note to Ms. Gonzalez "requested in writing the reasons for the denial."

23   On September 5, 2002, Mr. Robinson met with Ms. Smith regarding denial of the in plant liaison

24   detail. In his declaration, Mr. Robinson attributes Ms. Smith to have informed him that "I was being

25   transferred to a new unit in the middle of October and that I was denied the Liaison position so I could

26   receive 'technical training.' This was the first time I had been told that I would be transferred to a new

27   unit or that I was to receive any kind of training as a 'tax examiner.'"

28   After September 5, 2002, Mr. Robinson received Ms. Gonzalez' memo that he was on detail as

4

1    a tax examiner with the accounts management department.  The memo states:

2              As you were informed you will be attending technical training during the months
     of October, November, & December.

3              . . . This technical training will be starting in mid-October.  Therefore,
4    management is unable to release you at this time.

5          In his deposition, Mr. Robinson "concluded" that "I had been removed because they said I made

6    an error on a travel voucher."  Although he claims that he is unable to "pinpoint a person on a certain

7    date or a certain meeting," Mr. Robinson testified that someone at IRS told him that his falsified travel

8    vouchers were "also" a reason to deny his release to the in plant liaison detail:

9          Q.    . . . you don't recall when a conversation would have occurred and don't recall
                 with whom any particular conversation occurred in which you were told that you
10               were denied the position because you had previously submitted improper travel
                 vouchers; is that correct?
11
           A.    Right.  At some point, management let me know, but it was much later.  After I
12               had concluded what had happened, I found out that it was based on that also, but
                 no one told me at that time, and I can't remember where – who told me, but I did
13               find out eventually, much later.

14         Q.    And do you remember when you found out much later that you were expressly
                 told by management that one of the reasons that you were denied the position was
15               because you had previously submitted improper travel vouchers?

16         A.    I can't remember.

17         Q.    Do you remember who told you?

18         A.    No.

19         Q.    But you do recall someone in management finally telling you, this is one of the
                 reasons that you were denied the In Plant position?
20
           A.    Yes.
21

22         Mr. Robinson is unsure "who would be the individual to release" him to the in plant liaison

23   detail.  Mr. Robinson attributes Bonnie Lewis ("Ms. Lewis") to have "had a say-so in that decision."

24   Mr. Robinson lacks knowledge that Ms. Lewis considered Mr. Robinson's race or prior Equal

25   Employment Opportunity ("EEO") activity:

26         Q.    Do you have any evidence that you're aware of to indicate that Ms. Lewis took
                 into account your race in determining not to release you for the In Plant Liaison
27               position in 2002?

28         A.    No.

                                          5

1    Q.    Do you have any evidence that Ms. Lewis took into account any prior EEO
activity that you had been involved with, with respect to a decision not to release

2    you for the In Plant Liaison position in 2002?

3    . . .

THE WITNESS: Due to the fact that I had no conversation with Bonnie, I can't really

4    attest anything that Bonnie said, thought, did, didn't do.  I wouldn't know anything about
that because I didn't have any conversations with Bonnie during that time frame.

5

6          Mr. Robinson, on September 5, 2002, sought EEO counseling, and on October 21, 2002, filed

7  a formal complaint to allege that he was subject to race discrimination and retaliation for prior EEO

8  activity when he was denied the in plant liaison detail.

9          On October 6, 2002, Mr. Robinson's detail with the accounts management department was

10  terminated, and he was moved to another department.  Mr. Robinson received tax examiner training in

11  February 2003, at a point which he claims was "well after the time my participation in the In Plant

12  Liaison Technician position would have terminated had I been released by Emma Smith."

13                    **Mr. Robinson's Admissions**

14          In response to the Secretary's requests for admissions, Mr. Robinson admitted that he is unaware

15  of anyone at the Fresno center who was released for a liaison or detail position and who the IRS:

16        1.    Had charged previously with knowing submission of inaccurate reimbursement requests

17              or failure to follow written directives; or

18        2.    Had suspended previously for knowing submission of inaccurate reimbursement requests

19              or failure to follow written directives or to make timely payments on a government-

20              issued credit card.

21  Mr. Robinson further admitted that the IRS, in deciding whether to release an employee for a liaison or

22  detail position, may consider the employee's failure to follow written directives and knowing submission

23  of inaccurate reimbursement requests for travel vouchers.

24               **Mr. Robinson's Claims And Damages**

25          Mr. Robinson proceeds on his Second Amended Complaint for Damages ("SAC").  This Court

26  dismissed several of his SAC discrimination and retaliation claims.  After appeal to the Ninth Circuit

27  Court of Appeals and its affirming and reversing in part dismissal of claims, Mr. Robinson is limited

28  to the SAC's following Title VII discrimination and retaliation claim:

1   Robinson acted as National Office Liaison for three years; each year, he received
2   excellent evaluations.  Subsequently, when he applied for an annual position, although
    selected to participate, he was later told that he could not go.  When Robinson questioned
3   management regarding his removal from participation, he was removed from his position
    as National Office Liaison.  Initially, Robinson was given no explanation for this
4   removal.  Two months later, he was told that he had improperly submitted travel
    vouchers.  Non-African-American employees also submitted improper travel vouchers,
5   but did not suffer loss of positions or similar discipline.

6   Mr. Robinson claims economic losses of $16,800 for lost overtime (25 hours per week for 21.7

7   weeks at $32 per hour) and for $15,200 lost per diem ($100 per day for 152 days).  Mr. Robinson

8   testified that overtime for in plant liaison is "not concrete" and varied but 25 hours a week "was the

9   average that I could come up with in my memory" without pay stubs, overtime submissions, or other

10  documents.  Although Mr. Robinson's prior in plant liaison detail was three to four months, he assumed

11  a five-month stint for the denied in plant liaison detail because of increased responsibility but

12  acknowledges no one informed him it would be five months.

13  Mr. Robinson claims $300,000 for compensatory damages for emotional distress, sleeping

14  disorders, weight gain, headaches, hair loss and dental problems.  In response to the Secretary's requests

15  for admissions, Mr. Robinson admits he did not seek medical or mental health care or treatment for

16  alleged conduct at issue in this action.  During 2000-2005, Mr. Robinson received medical care for

17  insomnia, weight gain, headaches and loss of hair but did not treat with a psychologist or psychiatrist.

18  **DISCUSSION**

19  **Summary Judgment Standards**

20  The Secretary seeks summary judgment in the absence of evidence that Mr. Robinson's denied

21  in plant liaison detail was based on racial discrimination or retaliation for EEO activity.  Mr. Robinson

22  responds that a triable issues arise in that the denied in plant liaison detail followed shortly after Mr.

23  Robinson filed an MSPB complaint alleging race discrimination.

24  F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

25  – or the part of each claim or defense – on which summary judgment is sought."  "A district court may

26  dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

27  judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st

28  Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

1    *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).   A

2    "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

3    renders all other facts immaterial" to entitle the moving party to summary judgment.  *Celotex Corp. v.*

4    *Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

5         "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

6    court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech*

7    *Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

8    Only disputes over facts that might affect the outcome of the suit under the governing law will properly

9    preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

10        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

11   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

12   persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

13   "If, however, a moving party carries its burden of production, the nonmoving party must produce

14   evidence to support its claim or defense."  *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

15   at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

16   fact, the moving party wins the motion for summary judgment."  *Nissan Fire*, 210 F.3d at 1103; *see*

17   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

18   of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

19   make the showing sufficient to establish the existence of an element essential to that party's case, and

20   on which that party will bear the burden of proof at trial.")

21        "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

22   the nonmoving party defeats the motion."  *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

23   106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough

24   'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp.*

25   *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

26   289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the

27   plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

28        As discussed below, Mr. Robinson lacks evidence to support prima cases of discrimination or

9

1   retaliation to warrant summary judgment for the Secretary.

2   **Burden Shifting Framework**

3        The Secretary challenges the merits of Mr. Robinson's discrimination and retaliation claims. For

4   Title VII discrimination and retaliation claims at issue here, the *McDonnell Douglas*[5] burden-shifting

5   framework applies in the absence of direct evidence of discrimination or retaliation. *Metoyer v.*

6   *Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-731

7   (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme announced

8   in *McDonnell Douglas*). "At the first step of *McDonnell Douglas*, the plaintiff must establish a prima

9   facie case of discrimination or retaliation." *Metoyer*, 504 F.3d at 931, n. 6. "The requisite degree of

10  proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and

11  does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*,

12  26 F.3d 885, 889 (9th Cir. 1994).

13       "If the plaintiff makes out her prima facie case of either discrimination or retaliation, the burden

14  then 'shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly

15  discriminatory [or retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v. County of*

16  *Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)).

17       "Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason

18  for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat

19  summary judgment by satisfying the ususal standard of proof required'" under F.R.Civ.P. 56(c)(1).

20  *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

21  2006) (citations and internal quotation marks omitted)). If the employer carries its burden, the plaintiff

22  must have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered

23  by the employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of*

24  *Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S.

25  at 804; 93 S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997). "If

26  a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated

27

28        [5]      *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

1    motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to

2    be believed." *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993).  The plaintiff is required

3    to produce "specific, substantial evidence of pretext" to avoid summary judgment.  *Collings v. Longview*

4    *Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995), *cert. denied,* 516 U.S. 1048, 116 S.Ct. 711 (1996).

5         Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to

6    show that the employer intentionally discriminated because of the plaintiff's race. *See Burdine*, 450 U.S.

7    at 253, 101 S.Ct. 1089; *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000), *cert. denied,*

8    533 U.S. 950, 121 S.Ct. 2592 (2001); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir.

9    1990).

10        As an alternative to the *McDonnell Douglas* framework, a plaintiff responding to a summary

11   judgment motion "may simply produce direct or circumstantial evidence demonstrating that a

12   discriminatory [or retaliatory] reason more likely than not motivated [the employer]." *McGinest v. GTE*

13   *Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted).  The "*McDonnell Douglas* test is

14   inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc.*

15   *v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613 (1985).

16        "When the plaintiff offers direct evidence of discriminatory [or retaliatory] motive, a triable issue

17   as to the actual motivation of the employer is created even if the evidence is not substantial. . . . it need

18   be 'very little.'" *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Lindahl*

19   *v. Air France*, 930 F.2d 1434, 1438 (9th Cir 1991)).  "Direct evidence is evidence which, if believed,

20   proves the fact [of discrimination or retaliation] without inference or presumption." *Goodwin*, 150 F.3d

21   at 1221 (citation omitted).  "Direct evidence typically consists of clearly sexist, racist, or similarly

22   discriminatory statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC.,* 413

23   F.3d 1090, 1095 (9th Cir. 2005).

24        With these evidentiary standards in mind, this Court turns to the worthiness of Mr. Robinson's

25   discrimination and retaliation claims.

26                              **Discrimination**

27        Title VII prohibits an employer "to fail or refuse to hire or to discharge any individual, or

28   otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

1  privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1).  The

2  Secretary challenges Mr. Robinson's ability to establish a prima facie case of discrimination in absence

3  of evidence that similarly situated employees were treated more favorably than Mr. Robinson.  Mr.

4  Robinson offers nothing to oppose summary judgment on his discrimination claim.

5                                              *Prima Facie Case*

6            A plaintiff "bears the initial burden of establishing a prima facie case of discrimination by

7  introducing evidence that gives rise to an inference of unlawful discrimination." *Bradley v. Harcourt,*

8  *Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

9            For a prima facie case, a plaintiff "must generally show" that:

10       1.      He/she was a member of a protected class;

11       2.      He/she was qualified for the position he sought;

12       3.      He/she suffered an adverse employment action; and

13       4.      There were circumstances suggesting that the employer acted with a discriminatory

14               motive, such as, similarly situated employees not in the protected class received more

15               favorable treatment.

16  *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817;

17  *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006); *see also Jones v. Department of Corrections and*

18  *Rehabilitation*, 152 Cal.App.4th 1367, 1379, 62 Cal.Rptr.3d 200 (2007) (citing *Guz v. Bechtel Nat. Inc.*,

19  24 Cal.4th 317, 354-355, 100 Cal.Rptr.2d 352 (2000) (adopting the test applicable to federal

20  discrimination claims in accordance with *McDonnell Douglas*)).

21                                              *Similarly Situated*

22            The Secretary argues that Mr. Robinson lacks direct evidence of discrimination or evidence to

23  support a prima facie case of discrimination.  The Secretary initially attacks the absence of evidence of

24  persons similarly situated to Mr. Robinson "who were released for the same detail."  The Secretary

25  points to Mr. Robinson's reliance on "vague" assertions that his supervisor Ms. Brockbank and fellow

26  IRS employee Mr. Villado had travel voucher problems but participated in liaison details or travel.

27            "[T]o show that the 'employees' allegedly receiving more favorable treatment are similarly

28  situated (the fourth element necessary to establish a prima facie case under Title VII), the individuals

1   seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all

2   material respects." *Moran*, 447 F.3d at 755.  A similarly situated employee need not be "identical," but

3   the plaintiff must show that the other employee "dealt with the same supervisor, [was] subject to the

4   same standards, and had engaged in similar conduct without such differentiating or mitigating

5   circumstances as would distinguish [his] conduct or the employer's treatment of [him]." *Gates v.*

6   *Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir.2008); *Crawford v. Ind. Harbor Belt RR. Co.*, 461 F.3d 844,

7   846 (7th Cir.2006) (holding that a similarly situated employee is one who is "comparable to plaintiff in

8   all material respects").

9        The "similarly situated" requirement "is strict," and "courts recognize the probability that a

10  manager may have different but legitimate concerns about the conduct of different employees." *Harris*

11  *v. Winter*, 2007 WL 2900168, *15 (E.D. Cal. 2007).

12       The Secretary challenges that Mr. Robinson has produced evidence that either Ms. Brockbank

13  or Mr. Villado was disciplined for travel voucher falsification or failure to follow written directives but

14  given a liaison detail.  The Secretary points to Mr. Robinson's discovery responses that he lacks

15  evidence of an IRS employee released for a liaison detail after having been charged with knowing

16  submission of false travel vouchers or failure to follow written directives.  The Secretary argues that the

17  absence of similar disciplinary history excludes Ms. Brockbank and Mr. Villado from comparison.  *See*

18  *Leong v. Potter*, 347 F.3d 1117, 1124 (proposed comparators who had not "amassed a record of

19  misconduct comparable" to plaintiff's were not similarly situated); *Caskey v. Colgate-Palmolive Co.*,

20  535 F.3d 585, 592 (7th Cir. 2008) (male employees were not similarly situated to female plaintiff because

21  they held different positions with separate responsibilities and supervisors and the few employees with

22  comparable job descriptions lacked the differentiating circumstances of having excessive unexcused

23  absences or having sustained a work-related injury).

24       The Secretary notes differences among Mr. Robinson, Mr. Villado and Ms. Brockbank.  Mr.

25  Villado's travel voucher discrepancies were not as serious as Mr. Robinson's discrepancies.  Mr.

26  Brockbank had no liaison detail.  Ms. Brockbank and Mr. Villado were neither demoted nor suspended

27  due to travel voucher issues.  The Secretary concludes that Ms. Brockbank and Mr. Villado were not

28  similarly situated in "all material respects" to prevent Mr. Robinson to establish a prima facie case of

13

1  discrimination.

2      Mr. Robinson offers no opposition to summary judgment on his discrimination claim.  The

3  Secretary is correct that the record lacks evidence to support a prima facie discrimination claim,

4  especially given that nothing reflects that similarly situated employees were treated more favorably than

5  Mr. Robinson.  Mr. Robinson's discrimination claim fails and is subject to summary judgment.

6                                      **Retaliation**

7      Title VII prohibits an employer "to discriminate against any of his employees or applicants for

8  employment . . . because he has opposed any practice made an unlawful employment practice by this

9  subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

10  investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The Secretary

11  challenges Mr. Robinson's ability to establish a prima facie case of retaliation in the absence of a causal

12  link between his EEO activity and failure to release him to the in plant liaison detail.  Mr. Robinson

13  argues that close proximity between his August 26, 2002 MSPB complaint and his September 5, 2002

14  in plant liaison denial creates a factual issue to defeat summary judgment on his retaliation claim.

15                                  *Prima Facie Case*

16      To make out a retaliation prima facie case, a plaintiff must demonstrate that:

17      1.      He/she engaged in protected activity;

18      2.      He/she suffered an adverse employment action; and

19      3.      There was a causal link between his/her activity and the employment action.

20  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Brooks v. City of San*

21  *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

22                                     *Proximity*

23      The Secretary identifies Mr. Robinson's sole "protected activity" as his participation in an April

24  2001 administrative complaint in which he was named as a class member.  The Secretary argues that the

25  September 2002 decision to deny Mr. Robinson's in plant liaison detail was too remote in proximity to

26  his administrative complaint filed 17 months prior.

27      Mr. Robinson responds that the Secretary focuses on the wrong administrative complaint in that

28  Mr. Robinson's August 26, 2002 MSPB administrative complaint is at issue.  The Secretary accuses Mr.

Robinson of "newly" asserting that the MSPB complaint is his "protected activity" in that Mr. Robinson failed to identify the MSPB complaint in his deposition or discovery responses.  The Secretary characterizes the MSPB complaint as "a wholly separate process" from EEO activity.

To support an inference of retaliatory motive, the adverse action must have occurred "fairly soon after the employee's protected expression." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir.2000).  "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000).  "[E]vidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507.

"A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see Miller v. Fairchild Industries, Inc.,* 885 F.2d 498, 505 (9th Cir.1989) (discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation).

The record is unclear as to the August 26, 2002 MSPB administrative complaint upon which Mr. Robinson relies.  The MSPB administrative complaint does not appear in the record.  Based on Mr. Robinson's limited information, the MSPB administrative complaint is based on facts subject to his September 19, 2001 EEOC claim as to his August 2001 suspension.  The MSPB administrative complaint thus addresses matters arising a year prior to the August 26, 2002 MSPB administrative complaint and the September 5, 2002 in plant liaison denial.  No factual issue as to causation is raised in that the MSPB administrative complaint addressed matters pending in Mr. Robinson's then ongoing EEO activity.  Mr. Robinson offers nothing as to causation other than the presence of the MSPB administrative complaint.  The MSPB administrative complaint fails to raise a factual issue as to a prima facie case of retaliation.

Moreover, this Court agrees with the Secretary that the MSPB complaint is a "new theory" which

/ / /

/ / /

15

1    cannot be considered on summary judgment.   Under F.R.Civ.P. 37(c)(1),[6] plaintiff cannot rely on

2    undisclosed facts "to raise a triable issue of fact defeating summary judgment." *Cambridge Electronics*

3    *Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 324 (C.D. Cal. 2004).  Identifying the MSPB complaint

4    as this late date is neither substantially justified nor harmless.  Mr. Robinson's failure to identify the

5    MSPB complaint as a basis for retaliation bars his reliance on it.

6                              ***Decision Maker's Knowledge Of Protected Activity***

7          The Secretary further challenges Mr. Robinson's inability to demonstrate that the individual who

8    denied his in plant liaison detail knew of Mr. Robinson's 2001 EEO activity or the August 26, 2002

9    MSPB complaint.  "To show the requisite causal link, the plaintiff must present evidence sufficient to

10   raise the inference that her protected activity was the likely reason for the adverse action. . . . Essential

11   to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected

12   activity."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  "[I]f a plaintiff's causation

13   arguments rest on the relative timing of his protected activity and his dismissal, the plaintiff must also

14   clearly show that the defendant was aware of the protected activity when the adverse employment

15   decision was made."  *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1126 (E.D. Cal. 2006);

16   *see Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003) (in a Title VII

17   case, "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the

18   defendant was aware that the plaintiff had engaged in protected activity"); *Gifford v. Atchison, Topeka*

19   *& Santa Fe Ry. Co.*, 685 F.2d 1149, 1155 (9th Cir. 1982) (in a Title VII case, to have a viable retaliation

20   claim for engaging in protected activity, the employee must show "that the employer was aware of the

21   conduct" which constituted protected activity).  The Secretary points to Mr. Robinson's absence of

22   evidence or knowledge as to the decision to deny him the in plant liaison detail.

23         Mr. Robinson fails to address whether the decision maker knew of any of Mr. Robinson's

24   protected activities, including the August 26, 2002 MSPB complaint.  In his deposition, Mr. Robinson

25   acknowledged that he is unsure "who would be the individual to release" him to the in plant liaison

26   _____

27        [6]      F.R.Civ.P. 37(c)(1) provides: "If a party fails to provide information . . . as required by Rule 26(a) or (e),
     the party is not allowed to use that information . . . to supply evidence on a motion . . . , unless the failure was substantially
28   justified or is harmless."

detail and whether a potential decision maker, including Ms. Lewis, considered his protected activities. The failure to establish a link between denial of the in plant liaison detail and decision maker knowledge of Mr. Robinson's protected activities dooms his retaliation claim.

**Legitimate Reason**

The Secretary continues that regardless of the absence of prima facie cases of discrimination or retaliation, the Secretary articulated legitimate, non-discriminatory reasons to deny Mr. Robinson the in plant liaison detail. The Secretary notes that Mr. Robinson, during his prior in plant liaison detail, abused the "substantial trust" placed in employees on in plat liaison details. The Secretary points out that Mr. Robinson fails to "oppose or even meaningfully address" the IRS' legitimate, non-discriminatory reasons to deny him the in plant liaison detail.

If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281; *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379; *Brundage*, 57 Cal.App.4th at 236, 66 Cal.Rptr.2d at 835.

"The defendant's burden at this stage is one of production, not persuasion. The court may not make a credibility assessment." *Njenga v. San Mateo County Superintendent of Schools*, 2010 WL 1261493, at *14 (N.D. Cal. 2010) (citing *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000)). "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. 254, 101 S.Ct. 1089.

The Secretary notes that legitimate, non-discriminatory reasons to deny Mr. Robinson the in plant liaison detail included his prior submission of false or inaccurate travel vouchers and failure to timely pay his government credit card. The Secretary points to Mr. Robinson's suspension and demotion following an IRS investigation. The Secretary further points to Mr. Robinson's discovery concessions that submission of false travel vouchers and failure to follow written directives warrant denial of an in plant liaison detail. The Secretary identifies Mr. Robinson's February 2003 training as further legitimate, non-discriminatory reasons to deny the in plant liaison detail in that the training conflicted with the timing of the detail.

1    Mr. Robinson raises no meaningful challenge to the Secretary's proffered reasons to deny the

2    in plant liaison detail and merely notes that Mr. Robinson did not receive the training until February

3    2003, after which he would have presumably completed the detail.  Mr. Robinson attempts to diminish

4    the seriousness of the travel voucher falsification by suggesting "[c]onfusion on the part of the rental car

5    company and on the part of the IRS."  In the end, Mr. Robinson offers nothing to dispute the IRS'

6    legitimate grounds to deny him the in plant liaison detail and at best offers conjecture.

7                                              **Pretext**

8    The Secretary contends that Mr. Robinson lacks evidence that the grounds to deny his in plant

9    liaison detail were a pretext for discriminatory motive or in retaliation for his prior EEO activity.

10    "If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the

11    claimed adverse action, the *McDonnell Douglas* framework and its presumption of discrimination

12    disappears, and the plaintiff is left to prove by a preponderance of the evidence that the reasons offered

13    by the defendant are merely a pretext for discrimination [or retaliation]." *Njenga*, 2010 WL 1261493,

14    at *14 (citing *see Reeves*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)).  The "critical" issue at the pretext

15    stage is whether the plaintiff produces "sufficient evidence to raise a triable issue of fact as to whether

16    the reason proffered by [employer] for denying her the promotion was a pretext for unlawful retaliation

17    or discrimination. *Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1141 (9th

18    Cir. 2001);  *see Manatt v. Bank of America,* N.A., 339 F.3d 792, 801 (9th Cir. 2003) ("Because [plaintiff]

19    failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary

20    judgment for the [defendant] must be affirmed."); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.

21    1983) (failure to "produce any specific, substantial evidence of pretext" support summary judgment for

22    employer);  *Brundage*, 57 Cal.App.4th at 236, 66 Cal.Rptr.2d at 835.

23    "In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce

24    'specific, substantial evidence of pretext.'" *Wallis*, 26 F.3d at 890 (quoting *Steckl*, 703 F.2d at 393.  In

25    other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid

26    summary judgment." *Steckl*, 703 F.2d at 393.  A "plaintiff cannot create a genuine issue of pretext to

27    survive a motion for summary judgment by relying solely on unsupported speculations and allegations

28    of discriminatory intent." *Crawford v. MCI Worldcom Communications, Inc.*, 167 F.Supp.2d 1128,

1    1135 (S.D. Cal. 2001).

2        The Secretary points to Mr. Robinson's inability to identify who decided to deny Mr. Robinson

3    the in plant liaison detail in that he testified that he heard that Ms. Lewis may have had a "say so" but

4    acknowledges that he has no knowledge or evidence of what Ms. Lewis considered. The Secretary notes

5    that Mr. Robinson conceded that he was in training during the time covering at least a portion of the in

6    plant liaison detail. The Secretary points to the IRS' "good faith" basis to deny Mr. Robinson the in

7    plant liaison detail. In judging whether a defendant's proffered justifications were "false," the

8    importance is not "whether they were objectively false." *Villiarimo*, 281 F.3d at 1063. "Courts 'only

9    require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial

10   or even baseless.'" *Villiarimo*, 281 F.3d at 1063 (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733

11   (9th Cir. 2002)). "Thus, the inquiry is limited to whether the employer believed the allegation in good

12   faith and whether the decision to discharge the employee was based on that belief." *Waggoner v. City*

13   *of Garland, Tex.*, 987 F.2d 1160, 1165-1166 (5th Cir. 1993).

14       Mr. Robinson rests his retaliation claim on the proximity of his August 26, 2002 MSPB

15   complaint and the September 5, 2002 denial of the in plant liaison detail. Mr. Robinson  offers no

16   specific, substantial evidence of pretext and does not event try to do so. Mr. Robinson offers nothing

17   to question the IRS' justification to deny him the in plaint liaison detail. Mr. Robinson appears unable

18   to do so, especially given his August 2001 suspension and October 2001 demotion and nothing in the

19   record to suggest the suspension and demotion were unwarranted. Mr. Robinson's retaliation claim

20   further fails in the absence of factual issues as to pretext.

21                                **Overtime And Per Diem**

22       The Secretary challenges Mr. Robinson's claims for $16,800 lost overtime and $15,000 lost per

23   diem in the absence of supporting evidence. The Secretary notes that Mr. Robinson fails to address the

24   Secretary's challenges to the overtime and lost per diem claims.

25       For Title VII claims, "back pay remains an equitable remedy to be awarded by the district court

26   in its discretion." *Lutz v. Glendale High School*, 403 F.3d 1061, 1069 (9th Cir. 2005).

27       The Secretary notes that Mr. Robinson's overtime claim "is by his own admission speculative."

28   The Secretary points to the absence of substantive evidence as to potential overtime in that Mr. Robinson

"guessed" that he would have worked 25 hours of overtime per week for a five-month period at $25 per hour to total $16,800 based on his "memory" and assumptions. The Secretary points to Mr. Robinson's deposition testimony that his prior in plant liaison detail was limited to three or four months and his concession that he assumed that the in plant liaison detail at issue would be five months. The Secretary concludes that Mr. Robinson's overtime claim is too speculative. *See Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 880 (6th Cir. 1991) ("While back pay in a Title VII case need not be proven with the exactitude . . . neither can such an award be appropriately founded on mere speculation."); *McKenna v. City of Philadelphia*, 636 F.Supp.2d 446, 459 (E.D. Pa. 2009) (finding "banked" vacation and sick time too speculative to support back pay award).

The Secretary argues that the per diem compensates "costs of living away from home" and since Mr. Robinson did not incur such costs, he is not entitled to them. The Secretary characterizes "back pay in the form of per diem" as a "windfall."

As discussed above, Mr. Robinson lacks viable Title VII discrimination or retaliation claims to support his speculative overtime and per diem claims. The Secretary is correct that such claims fail, and Mr. Robinson offers nothing to support them.

## Compensatory Damages

The Secretary challenges Mr. Robinson's $300,000 compensatory damages claims for sleep disorders, weight gain, headaches, hair loss and dental problems in the absence of supporting documentation.

Under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1), "a Title VII plaintiff who wins a back pay award may also seek compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Landgraf v. USI Film Products*, 511 U.S. 244, 253, 114 S.Ct. 1483 (1994) (internal quotation marks and citation omitted). In *Carey v. Piphus*, 435 U.S. 247, 255-56, 98 S.Ct. 1042 (1978), the U.S. Supreme Court held that compensatory damages, such as for emotional harm caused by the deprivation of constitutional rights, may be awarded only when the claimant submits proof of actual injury. Although *Carey* refers to damage awards under 42 U.S.C. § 1983, its reasoning and standards apply to Title VII emotional distress claims. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1053

1   (5th Cir. 1998); *see Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1121 (3rd Cir. 1988) (plaintiff in

2   a corresponding 42 U.S.C. § 1981 action "must present evidence of actual injury, however, before

3   recovering compensatory damages for mental distress"); *Ramsey v. American Air Filter Co.*, 772 F.2d

4   1303, 1313 (7th Cir.1985) ("competent evidence" must support award for compensatory damages in §

5   1981 action). "[S]peculative damages will not be awarded" in Title VII cases. *Gunby*, 840 F.2d at 1121.

6        The Secretary points to Mr. Robinson's admission that he did not seek medical or mental health

7   care for denial of the in plant liaison detail.  The Secretary argues that Mr. Robinson lacks an actionable

8   claim for emotional distress in that he is unqualified to opine that his insomnia, weight gain, headaches,

9   hair loss and dental problems "were medically caused by the disappointment of not getting the liaison

10  position."  The Secretary contends that Mr. Robinson is limited to "garden variety" emotional distress

11  with limited damages.

12       In evaluating the reasonableness of a non-economic damages award in discrimination suits,

13  courts often examine the duration, extent and consequences of mental anguish suffered by the plaintiff

14  to determine whether the case is a "garden variety" mental-anguish claim, in which the awards "hover

15  in the range of $5,000 to $30,000." *Kinneary v. City of New York*, 536 F.Supp.2d 326, 331 (S.D. N.Y.

16  2008); *see Rainone v. Potter*, 388 F.Supp.2d 120, 122 (E.D. N.Y. 2005) (low end "garden variety"

17  distress claims range from $5,000 to $35,000). "'In such cases, the evidence usually is limited to the

18  testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents

19  minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or

20  consequences of the condition.'" *Kinneary*, 536 F.Supp.2d at 331 (quoting *Reiter v. Metropolitan

21  Transp. Auth. of New York,* 2003 WL 22271223, at *9 (S.D. N.Y. 2003). "[C]ourts scrupulously analyze

22  an award of compensatory damages for a claim of emotional distress predicated exclusively on the

23  plaintiff's testimony." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996), *cert. denied,*

24  520 U.S. 1116, 117 S.Ct. 1246 (1997).

25       The Secretary concludes that in the absence of expert opinion on Mr. Robinson's economic loss

26  and emotional distress claims, he is limited to no more than "garden variety" emotional distress.  Mr.

27  Robinson responds that he is entitled to offer testimony of his treating doctors as to Mr. Robinson's care,

28  treatment and prognosis.

1    With the failure of Mr. Robinson's discrimination and retaliation claims, his alleged

2    compensatory damages and evidence to support them are no longer at issue.   Mr. Robinson's

3    compensatory damages claims fail with his discrimination and retaliation claims, and Mr. Robinson

4    offers nothing to support compensatory damages.

5                                   **CONCLUSION AND ORDER**

6    For the reasons discussed above, this Court:

7    1.       GRANTS the Secretary summary judgment;

8    2.       DIRECTS the clerk to enter judgment in favor of Treasury Secretary Tim Geithner and

9              against plaintiff Kenneth Robinson and to close this action; and

10   3.       VACATES the July 12, 2011 pretrial conference and September 12, 2011 trial for this

11             action.

12   IT IS SO ORDERED.

13   **Dated:   May 31, 2011                        /s/ Lawrence J. O'Neill**
                                       UNITED STATES DISTRICT JUDGE

22